UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-61469-LEIBOWITZ/AUGUSTIN-BIRCH

**LETIDAS LOGISTICS, LLC,**

    *Plaintiff,*

v.

**CITIBANK, N.A.,**

    *Defendant,*

and

**ROYAL BENGAL LOGISTICS, INC.,**

    *Nominal Defendant.*

_____/

## ORDER

**THIS CAUSE** is before the Court upon a Motion to Dismiss filed by Defendant Citibank, N.A. ("Citibank") [ECF No. 11] (the "Motion"), filed on September 12, 2024. Plaintiff has responded [ECF No. 29], and Defendant has replied [ECF No. 40]. The Motion is, therefore, ripe for review. Upon due consideration of the Motion, the parties' arguments, and the relevant law, and being otherwise fully advised, the Motion is GRANTED on Plaintiff's aiding and abetting claims (Counts II, IV, and VI) for the reasons explained below.

**I.     STANDARD OF REVIEW**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. When considering a motion to dismiss, the Court must accept the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

## II.     PLAINTIFF'S ALLEGATIONS

Plaintiff's class action allegations, taken as true, are as follows:

A Ponzi scheme[1] was orchestrated and carried out by Defendant Citibank's bank customer—Nominal Defendant, Royal Bengal Logistics, Inc. ("RBL"). [ECF No. 1-1]. At the time of the Ponzi scheme, RBL was a transportation and logistics company registered as a common carrier with the U.S. Department of Transportation and located in Coral Springs, Florida. [*Id.* ¶ 17]. From at least August 2019, through June 21, 2023, RBL defrauded hundreds of people, purporting to offer high-yield investment opportunities that generate 12.5% to 325% of "guaranteed" returns. [*Id.* ¶ 18]. RBL's Ponzi scheme was two-fold. The first involved the "fictional sale of a semi-truck or trailer (the 'Equipment Scheme')." [*Id.* ¶ 1]. The second "centered on a long-term or short-term investment with a guaranteed fictional return (the 'Loan Scheme')." [*Id.* ¶ 1]. Plaintiff invested in RBL's

---

[1]     A Ponzi scheme is generally defined as a "phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *In re Pearlman*, 440 B.R. 569, 575 (Bankr. M.D. Fla. 2010).

Equipment Scheme and wired $35,000.00 "start-up" funds to the RBL account. [*See* ECF No. 1-1 at 35–46]. More than 1,500 persons invested in RBL's Equipment and Loan Schemes, providing approximately $112 million in total investment funds. [*Id.* ¶ 18].

Fast forward to the present day, the Ponzi scheme music has stopped, and RBL is out of business. RBL's assets are currently being liquidated by a court-appointed receiver in a securities fraud lawsuit brought by the Securities and Exchange Commission ("SEC"). *See SEC v. Royal Bengal Logistics, Inc., et al.,* No. 0:23-cv-61179-LEIBOWITZ (S.D. Fla.).[2] On November 6, 2024, RBL's former owner, Mr. Sanjay Singh, was found guilty after a jury trial of all eight counts charged in an indictment (alleging wire fraud conspiracy, substantive wire fraud, and money laundering). *See United States v. Sanjay Singh,* No. 0:23-cr-60117-LEIBOWITZ (S.D. Fla.).

Back to Citibank's Motion to Dismiss: In October 2021, RBL opened a business bank account at a Citibank branch located in Tamarac, Florida. [ECF No. 1-1 ¶ 78]. In its application, RBL represented that the balance for the account would range from $250,000.00 to $500,000.00. [*Id.* ¶ 79]. The first few months of account activity were unremarkable. However, things changed dramatically in December 2021. [*Id.* (citing RBL Bank Account Statements, Ex. 4)].

By January 2022, deposits to and credits from the account had increased to $558,000.00 and $870,000.00, respectively. [*Id.* ¶ 84]. As a result, Citibank flagged the account for "irregular activity." [*Id.*]. On January 28, 2022, Citibank "blocked" the outward flow of money from the account, noting a "deposit risk" and initiating a Post No Deposit ("PND"). [*Id.* ¶ 83]. The following week, on February 1, 2022, Citibank posted a "FRAUD HIGH PRIORITY NOTE" on the account. [*Id.* ¶ 85].

---

[2]   The Honorable Anuraag Singhal, U.S.D.J., stayed all litigation against RBL on June 21, 2023. *SEC v. Royal Bengal Logistics, Inc., et al.,* No. 0:23-cv-61179 (S.D. Fla.) [ECF No. 11 at 11]. In compliance with that Order, the parties to this action have stipulated to staying Plaintiff's claims against RBL here. [ECF No. 1-3].

Two days later, on February 3, 2022, Citibank posted a second "FRAUD HIGH PRIORITY NOTE," but nevertheless lifted the block on the account. [*Id.* ¶ 87].

Despite posting two fraud flags to the account in February 2022, Citibank kept the account open as debits and credits increased to $1 million each. [*Id.* ¶ 86]. Shortly after Citibank lifted the block on the account, a "suspicious deposit" triggered the bank to instruct its employees to "please consider all deposits" to the RBL account. [*Id.*]. In March 2022, account activity surpassed four hundred (400) transactions as debits "ballooned to approximately $4,315,00.00 with credits approximating $5,335,000.00." [*Id.* ¶ 88]. Also in March, Citibank "placed various internal notes on the account…, including three 'high priority' notes." [*Id.* ¶ 89].

By April 2022, the account's balance was $2,000,000.00, debits approximated $5,000,000.00, and credits neared $5,500,000.00. [*Id.* ¶ 90]. Throughout the month of April, "Citibank placed various internal high priority and fraud notes" on the account, including a second PND which was later removed. [*Id.* ¶ 91]. By May 2022, "debits and credits skyrocketed" to $7,610,000.00 and $7,250,000.00, respectively. [*Id.* ¶ 92]. Throughout the month of May, Citibank "placed various internal high priority notes for returned deposited items, with reasons ranging from insufficient funds to forgery. Other internal notes related to returned deposited items indicate 'refer to maker' or list no reason at all." [*Id.*]. Citibank finally blocked the account altogether on May 28, 2022, noting ***"FIRST PARTY FRAUD—BLOCK ACCOUNT—REFER FOR CLOSURE."*** [*Id.* ¶ 94]. The account was not closed, however, until June 27, 2022. [*Id.* ¶ 95]. The June 2022 RBL bank statement reflects a $0 balance with $1,555,000.00 in withdrawals. [*Id.*].

In the Complaint, Plaintiff asserts state law claims against Citibank, alleging that Citibank knew or should have known about the alleged fraud-- given the activities described above. [*Id.* ¶ 4].[3] Plaintiff

---

[3] Citibank removed Plaintiff's Complaint to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). [ECF No. 1 at 6–8].

also alleges that Citibank provided substantial assistance in furtherance of the Ponzi scheme by permitting RBL to use its "banking platform to engage in the transactions that were the subject of the [Ponzi] Scheme[]," for months after Citibank flagged the account for fraud. [*Id.* ¶ 121]. Plaintiff seeks to represent a class of investors who both invested in RBL's Schemes and whose investment funds were held by Citibank in the RBL bank account. [*Id.* ¶ 102].

Counts II, IV, and VI against Citibank are grounded in "aiding and abetting" liability and Count VII alleges unjust enrichment. For relief, Plaintiff seeks "damages [against Citibank] in the amount of all investments, together with interests and costs," and "other relief as the Court may deem just and proper." [ECF No. 1-1 at 25, 28, 30, 31].

### III. DISCUSSION

Citibank's argument for dismissal is two-fold. First, Citibank argues Plaintiff cannot establish aiding and abetting liability (Counts II, IV, and VI), because Plaintiff fails to plead facts showing that Citibank (1) knew RBL was engaged in a Ponzi scheme [*id.* at 12–21]; or (2) provided substantial assistance to RBL in furtherance of the scheme [*id.* at 21–23]. Second, Citibank challenges Plaintiff's unjust enrichment claim (Count VII) for failure to show Plaintiff conferred a direct benefit on Citibank [*id.* at 23–25], and because Citibank provided adequate consideration for the banking fees RBL paid. [*Id.* at 25]. Because Plaintiff has not alleged facts that show Citibank actually knew about the fraud, dismissal of the aiding and abetting claims is warranted.

#### A. Aiding and Abetting Counts (Counts II, IV, VI)

Plaintiff alleges that Citibank aided and abetted RBL's torts of breach of fiduciary duty, constructive fraud, and conversion. The elements of aiding and abetting are the same for each of these claims, so the Court considers them together. *Wiand v. Wells Fargo Bank, N.A.,* 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (citation omitted). Under Florida law, aiding and abetting claims have three elements: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of

the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of America, N.A.*, 455 F. App'x at 904, 906–07 (11th Cir. 2012) (per curiam) (citations omitted); *Perlman v. Wells Fargo Bank, N.A.,* 559 F. App'x 988, 993 (11th Cir. 2014) (per curiam) (citations omitted).

In the Motion, Citibank challenges both the "knowledge" and "substantial assistance" elements of Plaintiff's aiding and abetting claims. [ECF No. 11 at 12–23]. Plaintiff's aiding and abetting claims fail at the "knowledge" prong.

Aiding and abetting liability in cases such as this seeks recovery from a bank for the tortious acts of its account holder—not for any tortious act of the bank itself. It makes sense then that the "case law finding banks liable to third party non-customers necessarily sets a high standard for liability to be found." *Gevaerts v. TD Bank, N.A.,* 56 F. Supp. 3d 1335, 1343 (S.D. Fla. 2014) (Rosenberg, J.) (citing *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir. 2006)). That high standard is *actual knowledge. See Lawrence,* 455 F. App'x at 907 (affirming dismissal of aiding and abetting claims: "To be liable, the bank would have had to have actual knowledge of [the fraudster's] fraudulent activities."); *Wiand,* ("While actual knowledge may be shown by circumstantial evidence, courts 'stress that the requirement is *actual* knowledge' and the circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed.") (citation omitted); *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, 682 F. Supp. 3d 1112, 1136–37 (S.D. Fla. 2023) ("While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with specific allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud."). "[W]hen a claim of aiding and abetting is asserted against a bank, [the knowledge element] will only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings." *Perlman,* 559 F. App'x at 993 (citation omitted).

Further, "Florida does not require banking institutions that conduct routine banking services to investigate transactions involving its demand deposit accounts; therefore, merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly*." *Id.* (citations omitted).

Taking the allegations in the light most favorable to Plaintiff, it still fails to meet the high standard for pursuing relief against Citibank under an aiding and abetting theory. For starters, the Complaint alleges actual knowledge by assuming that Citibank must have known about the Ponzi scheme based on Mr. Singh's representation that the RBL account balance would range from $250,000 to $500,000, which Plaintiff maintains was "inconsistent with" the actual flow of funds to and from the account. [ECF No. 1 ¶ 79]. Plaintiff does not explain, however, how this inconsistency shows that Citibank actually knew RBL was pooling investor funds. Nor does Plaintiff allege directly at any point that Citibank actually knew RBL was running a Ponzi scheme.

Instead, Plaintiff describes suspicious activity in the RBL account that Plaintiff contends alerted Citibank to the fraud, as follows: In February 2022, Citibank twice flagged the RBL account for fraud. [Compl., ECF No. 1-1 ¶¶ 85, 87]. Shortly after flagging the account for fraud, account activity skyrocketed into the millions of dollars as Citibank employees were instructed to personally review "all deposits" because of suspicious activity. [*Id.* ¶¶ 87, 88, 90]. Citibank also issued multiple "high priority notes" related to suspicious activity in the RBL account over a four-month period. [*Id.* ¶¶ 89, 91, 92]. When Citibank finally blocked the account altogether on May 28, 2022, "The internal notation that accompanied the block indicated that RBL had *fifteen* returned deposited items since the beginning of March. Importantly, this note also indicated RBL was constantly 'wiring out' and 'depleting funds' . . . 'FIRST PARTY FRAUD-BLOCK ACCOUNT-REFER FOR CLOSURE.'" [*Id.* ¶ 94]. Notwithstanding that May 28, 2022, notation, the RBL account closed on June 27, 2022, with the June bank statement reflecting a balance of zero dollars with $1,555,000.00 in withdrawals. [*Id.* ¶

95]. These allegations are ones of atypical transactions and "red flags" that fall well short of plausibly alleging Citibank's actual knowledge of RBL's wrongdoing. *Perlman,* 559 F. App'x at 993 ("merely alleging that a bank should have known of a *Ponzi scheme based solely on a series of purportedly atypical transactions* is not sufficient to survive [a motion to dismiss].") (emphasis added).

In its opposition papers, Plaintiff relies on *Gervaerts*, *supra*, where Judge Rosenberg found that the plaintiff adequately pleaded actual knowledge on the part of the defendant bank. [ECF No. 29 at 11]. That case, however, is clearly distinguishable. There, the bank (1) had an obligation to report overdraws of attorney trust accounts to the New Jersey bar; (2) the bank had systems in place to detect such overdraws for reporting purposes; and (3) due to those reporting systems, the bank had actual knowledge of the overdraws in the subject account used for the Ponzi scheme. *Gervaerts*, 56 F. Supp. 3d at 1341–42. In this case, Citibank had no duty to report suspicious activity in the RBL account, and Florida law does not require it to investigate. *See Perlman,* 559 F. App'x at 993. Thus, after careful review, the Court finds Plaintiff does not plausibly plead that Citibank *actually knew* the RBL account was being used to commit fraud. Without showing actual knowledge, Plaintiff fails to state a claim for aiding and abetting against Citibank. Accordingly, Plaintiff's aiding and abetting claims do not withstand the motion to dismiss. Counts II, IV and VI are dismissed.

### B.     Unjust Enrichment (Count VII)

Citibank argues that the unjust enrichment claim should be dismissed because Plaintiff investors did not confer a direct benefit on Citibank. [ECF No. 11 at 23–25]. Further, even if they did, Citibank contends that it gave adequate consideration for the banking fees paid by RBL. [*Id.* at 25]. The Court addresses each argument in turn.

To state a claim for unjust enrichment, a plaintiff must show: "'(1) plaintiff has conferred [a] benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant

to retain the benefit without paying the value thereof to the plaintiff.'" *Williams v. Wells Fargo Bank N.A.,* No. 11-21233-CIV, 2011 WL 4368980, at *8 (S.D. Fla. Sept. 19, 2011) (citing *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.,* 667 So.2d 876, 879 (Fla. 3d DCA 1996) (quoting *Hillman Constr. Corp. v. Wainer,* 636 So.2d 576, 577 (Fla. 4th DCA 1994)). However, "[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Baptista v. JP Morgan Chase Bank, N.A.,* 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (internal citation and quotation marks omitted).

    1.    <u>Plaintiff plausibly pleads a direct benefit conferred on Citibank</u>.

Plaintiff first contends that it (and other investors) conferred a direct benefit on Citibank by wiring payments directly into the RBL account ("ABA/routing number 266086554"). [ECF No. 29 at 17 (citing Compl., ECF No. 1-1 ¶ 14)]. Plaintiff says that investors, therefore, conferred a benefit on Citibank in the form of Citibank's retaining investor money in the account which, in turn, conferred benefits on Citibank such as "interest, fees, charges, rebates, and other benefits associated with maintaining large deposit accounts." [Compl., ECF No. 1-1 ¶¶ 160, 162]. Drawing all reasonable inferences in favor of Plaintiff, the Court finds these allegations sufficient to show Plaintiffs conferred a direct benefit on Citibank such that dismissal of the claim is not warranted on this ground. *See Williams v. Wells Fargo Bank N.A.,* No. 11-21233-CIV, 2011 WL 4368980, at *10 (S.D. Fla. Sept. 19, 2011) (Altonaga, C.J.) (denying motion to dismiss unjust enrichment claim). Moreover, whether a benefit actually was conferred is a factual question that cannot be resolved on a motion to dismiss. *See Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC,* 650 F. Supp. 2d 1213, 1229 (S.D. Fla .2009) ("Whether the [defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage in this case.").

    2.    <u>Adequate consideration</u>.

Citibank's second argument, "adequate consideration," falls flat. Even if Citibank provided adequate consideration to RBL for the banking fees RBL paid to Citibank, Plaintiff contends Citibank was unjustly enriched by *Plaintiff* and by more than just banking fees. Plaintiff alleges that Citibank directly benefitted from Plaintiff's payments into the RBL account through "interest, fees, charges, rebates, and other benefits associated with maintaining large deposit accounts." [ECF No. 1-1 ¶¶ 160, 162]. The inequitable aspect of an unjust enrichment claim relates to a defendant's retention of a benefit without paying the value "to the *plaintiff* that conferred the benefit." *Bansal v. TD Ameritrade*, No 23-81539-Civ, 2024 WL 3009423, at *14 (S.D. Fla. 2024). On similar facts, the *Bansal* court denied defendants' motion to dismiss plaintiff investors' unjust enrichment claim on the grounds that "Plaintiffs have appropriately alleged… that it would be 'inequitable for Defendants to retain the benefit of fees received from investor funds when Defendants' services enabled investors to be defrauded and those investors received no consideration in exchange for those fees."[4] *Id.* At this stage of the litigation, the Court finds that RBL's payment of banking fees to Citibank in exchange for Citibank's providing banking services to RBL is not "adequate consideration" that bars Plaintiff's unjust enrichment claim.

Similar to the investors in *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1327 (M.D. Fla. 2013), Count VII sufficiently alleges: (1) Plaintiff conferred a benefit upon Citibank by making wire transfers into the subject account, thereby triggering transaction and service fees; (2) RBL paid the fees with investor funds; (3) Citibank knowingly accepted and retained the benefits; and (4) the circumstances are such that it would be inequitable for Citibank to retain the benefits. [ECF No. 1-1 ¶¶ 160–65]. At this stage of the litigation, taking all facts and reasonable inferences as true, the Court

---

[4] The Complaint also alleges Citibank's knowledge of the benefit conferred [Compl., ECF No. 1-1 ¶ 161]; Citibank's acceptance of the benefit conferred [*Id.*]; and that it would be inequitable for Citi to retain the benefit [*Id.* ¶ 163].

finds that Plaintiff plausibly pleads a cause of action for unjust enrichment. *See Lesti,* 960 F. Supp. 2d at 1327 (denying motion to dismiss unjust enrichment claim).

## IV.  CONCLUSION

Based upon the foregoing, and upon due consideration, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [**ECF No. 11**] is **GRANTED IN PART** and **DENIED IN PART**. Counts II, IV, and VI are DISMISSED WITHOUT PREJUDICE. The Motion is DENIED as to Count VII.

**DONE AND ORDERED** in the Southern District of Florida this 18th day of November, 2024.

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:  counsel of record