**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:24-cv-61469-LEIBOWITZ/AUGUSTIN-BIRCH**

**LETIDAS LOGISTICS, LLC,**
     *Plaintiff,*

v.

**CITIBANK, N.A.,**
     *Defendant,*
*and*

**ROYAL BENGAL LOGISTICS, INC.,**
     *Nominal Defendant.*
_____/

**<u>ORDER</u>**

**THIS CAUSE** is before the Court upon the Motion to Dismiss Plaintiff's First Amended Class Action Complaint by Defendant Citibank, N.A. ("Citi") [ECF No. 60] (the "Motion"), filed on January 13, 2025.  Plaintiff responded in opposition [ECF No. 65], and Defendant replied [ECF No. 70].  The Court previously granted in part Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [*See* ECF No. 43].  Plaintiff subsequently moved for leave to amend the complaint, which the Court granted.  [ECF Nos. 47, 38].  Upon due consideration of the amended pleading, the instant Motion, the parties' papers, and the relevant law, the First Amended Class Action Complaint withstands dismissal.  Accordingly, the Motion is DENIED, as explained below.

**I.      STANDARD OF REVIEW**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has held that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

1

not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  For allegations of fraud or mistake, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply.  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  A plaintiff alleging fraud must allege the following:

> (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.

*Ambrosia Coal & Const. Co. v. Pages Morales,* 482 F.3d 1309, 1316–17 (11th Cir. 2007) (per curiam) (citation omitted); *Walker v. Hallmark Bank & Tr., Ltd.,* 707 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984).

Although it must accept well-pleaded facts as true, the court is not required to accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, the court makes reasonable inferences in the plaintiff's favor, "but we are not required to draw plaintiff's inference." *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1260 (11th Cir. 2009) (citation and internal quotation marks omitted).  Similarly, "unwarranted deductions

of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff's amended allegations, taken as true for purposes of the instant Motion, are as follows: This purported class action lawsuit arises from a Ponzi scheme[1] orchestrated and carried out by Defendant Citi's bank customer—Nominal Defendant, Royal Bengal Logistics, Inc. ("RBL"). [FAC, ECF No. 49]. At the time of the Ponzi scheme, RBL was a transportation and logistics company located in Coral Springs, Florida. [*Id.* ¶ 22]. From at least August 2019 through June 21, 2023, RBL purported to offer high-yield investment opportunities that generated 12.5% to 325% of "guaranteed" returns from its operations. [*Id.* ¶ 23]. RBL's Ponzi scheme was two-fold. The first involved the fictional sale of a semi-truck or trailer (the "Equipment Program"). [*Id.* ¶¶ 33–45]. The second centered on a long-term or short-term investment with a guaranteed fictional return (the "Loan Program"). [*Id.* ¶¶ 46–53].

On March 1, 2022, Plaintiff entered into an Investment & Equipment Operating Lease Agreement with RBL, paying RBL a $35,000.00 "Start-up Payment" in exchange for the promise of recurring rental payments and ultimate ownership of a semi-truck after a five-year loan period. [*Id.* ¶ 74; ECF No. 49-1]. At least one of Plaintiff's investments was deposited by RBL into its bank account at a Citi bank. [FAC, ECF No. 4 ¶ 76]. More than 1,500 persons invested in RBL's Equipment and Loan Programs, totaling approximately $112 million. [*Id.* ¶¶ 23, 80].

---

[1]    "A Ponzi scheme is generally defined as a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *In re Pearlman*, 440 B.R. 569, 575 (Bankr. M.D. Fla. 2010) (citation and internal quotation marks omitted).

Today, RBL is out of business.  RBL's assets are currently being liquidated by a court-appointed receiver in a securities fraud lawsuit brought by the Securities and Exchange Commission ("SEC").  *See SEC v. Royal Bengal Logistics, Inc., et al.,* No. 0:23-cv-61179-LEIBOWITZ (S.D. Fla.).[2] RBL's former owner, Sanjay Singh, is awaiting sentencing for convictions of conspiracy to commit wire fraud, substantive wire fraud, and engaging in a monetary transaction in property derived from specified unlawful activity.  *See United States v. Sanjay Singh,* No. 0:23-cr-60117-LEIBOWITZ (S.D. Fla.).

Relevant to Citi's Motion to Dismiss, RBL opened a business bank account at a Citi branch located in Tamarac, Florida, on October 12, 2021.  [ECF No. 49 ¶ 88].  In its application, RBL represented to Citi that the account balance would range from $250,000.00 to $500,000.00.  [*Id.* ¶ 91]. On October 20, 2021, RBL failed Citi's Specially Designated Nationals ("SDN") check.  [*Id.* ¶ 89 (citing ECF No. 49-3 at 12)].  According to Plaintiff, RBL's SDN check failure "mean[t] that RBL's account should have never been opened" in the first place.  [ECF No. 49 ¶ 89].  Despite the SDN check failure, Citi's "banking representative performed a manual override of the SDN check," and opened the account anyway.  [*Id.* ¶ 90].[3]

The first few months of account activity were unremarkable.  [*Id.* ¶ 93].  However, things changed dramatically in December 2021.  [*Id.* ¶ 94 (citing RBL Bank Account Statements, ECF No. 49-4)].  By January 2022, deposits to and credits from the RBL account increased to $558,000.00 and

---

[2]     The Honorable Raag Singhal stayed all litigation against RBL on June 21, 2023.  *SEC v. Royal Bengal Logistics, Inc., et al.,* No. 0:23-cv-61179 (S.D. Fla.) [ECF No. 11 at 11].  In compliance with that Order, the parties to this action have stipulated to staying Plaintiff's claims against RBL is this action. [ECF No. 1-3].

[3]     At this stage of the proceedings, the court must draw all reasonable inferences in Plaintiff's favor.  *See Sinaltrainal,* 578 F.3d at 1260.  *But see Iqbal,* 556 U.S. at 678, 681 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and stating "conclusory allegations are "not entitled to be assumed true").

$870,000.00, respectively. [*Id.* ¶ 98]. As a result, Citi flagged the account for "irregular activity." [*Id.* ¶ 95]. On January 28, 2022, Citi "froze" the account, internally noting as follows:

> Account Blocked by Deposit Risk—Allow no [transactions]… $50,000 check from PNC Bank—check not endorsed, just stamped… maker's business name not exact match… PND[4] Account … Deposit Risk.

[*Id.* ¶ 97 (citing ECF No. 49-5)]. A few days later, on February 1, 2022, following an investigation, Citi classified RBL's account activity as fraudulent:

> FRAUD HIGH PRIORITY NOTE: [Daniel Sejour] [Call from Citi Biz Escalations]; Calling to release the hold on the acct; [client] is aware auth/made the deposit on 1/27/2022 in amount of $50k (check #1551) PNC Bank—Check is for loan—check in question does not match legal; PND Remains.

[ECF No. 49 (citing ECF No. 49-5)]. Plaintiff says that this internal note shows Citi had actual knowledge that a check deposited into the RBL account pertained to an "unverified or fraudulent 'loan' … that the check from the alleged lender did not match the legal entity … supposedly lending the funds… and… that the loan funds were being used for improper purposes." [*Id.* ¶ 99].[5]

On February 3, 2022, Citi entered another "FRAUD HIGH PRIORITY NOTE" indicating that the "deposit risk block had been removed" and advising bank employees to "please consider all deposits" because a "suspicious deposit" had been detected. [*Id.* ¶ 102]. Then on February 22, 2022, Citi posted yet another "FRAUD HIGH PRIORITY NOTE" which Plaintiff maintains shows Citi knew that fraudulent transfers to/from the RBL account were related to equipment finance agreements such as the one Plaintiff entered into with RBL which formed one basis for RBL's Ponzi scheme. [*Id.* ¶ 103 (citing 49-5)].

---

[4]     "PND" means "Post No Deposit." According to Plaintiff, a PND prevents withdrawals, transfers, or other debits from account, *i.e.,* a "freeze." [ECF No. 49 ¶ 97].

[5]     Different inferences and interpretations can be drawn from these facts, but for purposes of this motion to dismiss all reasonable inferences are to be drawn in Plaintiff's favor. *See Sinaltrainal,* 578 F.3d at 1260.

Despite posting three fraud flags to the RBL account in February 2022, Citi kept the account open as debits and credits increased to $1 million each that month. [*Id.* ¶¶ 100–01]. By March 2022, account activity surpassed four hundred (400) transactions, as debits "ballooned to approximately $4,315,00.00 with credits approximating $5,335,000.00." [*Id.* ¶ 106]. Also in March, Citi "placed various internal notes on the account…, including three 'high priority' notes." [*Id.* ¶ 107]. Also during this time period, Citi began to record the reasons for returned deposited items ("RDIs"), such as insufficient funds. [*Id.*].

By April 2022, RBL's account balance was $2 million, debits approximated $5 million, and credits neared $5.5 million. [*Id.* ¶ 108]. Throughout the month of April, the fraud alerts kept coming. In this month alone, Citi identified seven separate instances of "HIGH PRIORITY FRAUD" and/or "HIGH PRIORITY NOTE." [*Id.* ¶ 113]. On April 6, 2022, the RBL account was "Blocked by Deposit Risk" when a $35,000.00 Wells Fargo cashier's check could not be verified because the "client name" did not match the business name posted on the Florida Secretary of State's website. [*Id.* ¶ 109 (citing ECF No. -5)]. Citi, however, removed the block the very next day without any noting any reason why. [*Id.* ¶ 110]. Moreover, Citi posted at least four RDIs and one PND (which was later removed) to the RBL account during the month of April. [*Id.* ¶ 111].

By May 2022, "debits and credits skyrocketed" to $7.61 million and $7.25 million, respectively. [*Id.* ¶ 116]. And as early as May 4, 2022, Citi discovered through its own investigation that RBL was committing forgery. [*Id.* ¶ 112]. Citi finally blocked the RBL account altogether on May 28, 2022, noting *"FIRST PARTY FRAUD—BLOCK ACCOUNT—REFER FOR CLOSURE."* [*Id.* ¶ 118]. The account was not closed, however, until June 27, 2022. [*Id.* ¶ 121]. The June 2022 RBL bank statement reflects a $0 balance with $1,555,000.00 in withdrawals. [*Id.*].

According to the Plaintiff, in a June 1, 2022, internal note Citi acknowledged that, as of March 8, 2022, Citi not only knew about RBL's forgery, fraud with equipment financing agreements, fraud

with loans, and unmatched entities, but Citi also knew that RBL was defrauding consumers by immediately wiring out and depleting funds as funds were deposited by third parties, such as Plaintiff:

> RDIS W CLIENT SINCE 3-8-22 TILL NOW/constant wiring out/depletion of funds upon deposit-first party fraud block account/refer for closure/ $0 to client at closure due to possible return of other checks.

[ECF No. 49 ¶ 119 (citing 49-5 at 29)].[6]

Based on these allegations, Plaintiff seeks to represent a class of "[a]ll persons or entities in the United States… who entered into an agreement with RBL" under the Equipment Program of the Loan Program and "whose investment was deposited" into the RBL account at Citi "during the Relevant Period."  [*Id.* ¶ 113].

Plaintiff asserts claims against Citi for aiding and abetting RBL's breach of fiduciary duty (Count II), aiding and abetting RBL's constructive fraud (Count IV), aiding and abetting RBL's conversion (Count VI), as well as two counts for unjust enrichment (Counts VII and VIII).

For relief, Plaintiff seeks "damages [against Citi] in the amount of all investments, together with interests and costs," as well as judgment in its favor "for the value of the benefits conferred" on Citi "together with interest and costs" along with "other relief as the Court may deem just and proper." [ECF No. 49 at 31, 34, 37, 38, 39].

## III.    DISCUSSION

Citi seeks dismissal of the First Amended Class Action Complaint *with prejudice* on the grounds that any further amendment would be futile.  [ECF No. 60 at 7].  According to Citi, the futility arises because Plaintiff cannot cure pleading deficiencies identified by the Court with respect to Plaintiff's aiding and abetting claims.  [*Id.*].  For starters, the Court will not dismiss this action with prejudice because the Court has already ruled that Plaintiff plausibly pleads a claim for unjust enrichment.  [*See*

---

[6]      Once again, multiple inferences and interpretations might be drawn from this note; at the motion to dismiss stage, however, the court must draw all reasonable inferences in Plaintiff's favor. *See Sinaltrainal,* 578 F.3d at 1260.

ECF No. 43 at 8–11]. Count VII of the First Amended Complaint is nearly identical to the unjust enrichment claim asserted in the original complaint, so the Court need not revisit its ruling on that claim. The Court will, however, analyze the newly pleaded allegations with respect to the aiding and abetting claims and address Citi's argument that Count VIII (unjust enrichment) should be dismissed because it is duplicative of Count VII (unjust enrichment). [*See* ECF No. 60 at 18–19]. The Court begins with the aiding and abetting claims.

### A.      Aiding and Abetting Claims (Counts II, IV, VI)

Plaintiff alleges Citi aided and abetted RBL's torts of breach of fiduciary duty, constructive fraud, and conversion. [ECF No. 49 at 29–37]. The elements of aiding and abetting are the same for each of these claims, so the Court considers them together. *Wiand v. Wells Fargo Bank, N.A.,* 938 F. Supp. 2d 1238, 1244 (S.D. Fla. 2013) (citation omitted). Under Florida law, aiding and abetting claims have three elements: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of America, N.A.*, 455 F. App'x 904, 906–07 (11th Cir. 2012) (per curiam) (citing *AmeriFirst Bank v. Bomar*, 757 F. Supp. 1365, 1380 (S.D. Fla. 1991) and *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So.2d 368, 372 (Fla. 5th DCA 2005)); *see also Perlman v. Wells Fargo Bank, N.A.,* 559 F. App'x 988, 993 (11th Cir. 2014) (per curiam) (citations omitted).

In the Motion, Citi (once again) challenges both the "actual knowledge" and "substantial assistance" elements of Plaintiff's aiding and abetting claims. [ECF No. 60 at 7–17]. Upon due consideration, this time the Court finds Plaintiff plausibly pleads facts to support that Citi had actual knowledge of the fraudulent account activity and that Citi provided substantial assistance by keeping the account open for months after it knew about fraud related to RBL equipment financing loans. While the evidence may throw very different light upon these elements after discovery is conducted,

8

at this stage of the litigation and under the governing standard of review these claims survive as discussed below.

       1.      <u>Plaintiff plausibly pleads Citi's actual knowledge</u>.

"[W]hen a claim of aiding and abetting is asserted against a bank, [the knowledge element] will only be satisfied if the plaintiff pleads facts demonstrating that the bank had 'actual knowledge' of the wrongdoings." *Perlman,* 559 F. App'x at 993 (quoting *Lawrence v. Bank of America*, 455 F. App'x 904, 907 (11th Cir. 2012) (per curiam)). "[E]vidence establishing negligence, *i.e.,* that a bank 'should have known,' will not suffice." *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.,* 219 F.3d 519, 536 (6th Cir. 2000) (citation omitted). Actual knowledge may be shown by circumstantial evidence; however, the circumstantial evidence must demonstrate that the aider and abettor actually knew of the underlying wrongs committed. *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (citation omitted). "While the element of actual knowledge may be alleged generally, the plaintiff still must accompany that general allegation with specific allegations of specific facts that give rise to a strong inference of actual knowledge regarding the underlying fraud." *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, 682 F. Supp. 3d 1112, 1136–37 (S.D. Fla. 2023) (quoting *Lamm v. State St. Bank & Tr. Co.*, 889 F. Supp. 2d 1321, 1332 (S.D. Fla. 2012), *aff'd sub nom Lamm v. State St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014) (internal quotation marks omitted)). Allegations of mere "red flags" and "atypical" transactions do not suffice. *See Perlman,* 559 F. App'x at 993–94. "Florida does not require banking institutions that conduct routine banking services to investigate transactions involving its demand deposit accounts; therefore, merely alleging that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions is not sufficient to survive *Twombly." Id.* at 993 (citations omitted).

In the First Amended Class Action Complaint, Plaintiff cites an internal note dated June 1, 2022, in which (Plaintiff alleges) Citi acknowledge that, as of March 8, 2022, Citi (1) knew about RBL's

forgery, fraud with equipment financing agreements, fraud with loans, and unmatched entities, and (2) knew RBL was defrauding consumers by immediately wiring out and depleting funds upon the funds being deposited by third parties, such as Plaintiff. [ECF No. 49 ¶ 119 (citing 49-5)]. That allegation goes well beyond atypical transactions or simple red flags. *See Gevaerts v. TD Bank, N.A.,* 56 F. Supp. 3d 1335, 1342 (S.D. Fla. 2014) (Rosenberg, J.) (finding "actual knowledge" allegations sufficient to withstand dismissal).

Defendant takes issue with Plaintiff's characterization of the June 1, 2022, note, describing it as an "implausible . . . speculative guess" rather than proof of actual knowledge. [ECF No. 70 at 4]. This Court disagrees. Plaintiff is entitled to all reasonable inferences at this stage of the proceedings. *Iqbal,* 556 U.S. at 678. The June 1, 2022, internal note, construed as true and in combination with all the other fraud alerts and actions described in the First Amended Complaint, provides sufficient support at this stage that Citi knew about the fraud at some point between March 2022 and June 2022. Accordingly, the allegations in the First Amended Complaint satisfy the actual knowledge requirement of aiding and abetting liability.

2.    <u>Plaintiff plausibly pleads Citi's substantial assistance</u>.

The substantial assistance element of an aiding and abetting claim "occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur." *Gevaerts*, 56 F. Supp. 3d at 1342 (quoting *Lesti v. Wells Fargo Bank, N.A.*, 960 F. Supp. 2d 1311, 1325 (M.D. Fla. 2013) (internal quotation marks omitted).

The First Amended Class Action Complaint alleges Citi substantially assisted RBL's Ponzi scheme by permitting RBL to use its "platform for RBL's improper misuse of funds" after Citi learned about the fraud for nearly four months, from March 8, 2022, to June 27, 2022. [FAC, ECF No. 49 ¶¶ 8, 9, 10, 150, 155, 169, 172, 183, 186]. According to Plaintiff, Citi's own investigation revealed that, as early as March 8, 2022, Citi knew fraud related to equipment financing agreements was occurring

through RBL account activity, and Citi knew RBL was defrauding consumers by immediately wiring out and depleting funds when the funds were deposited by third parties, such as Plaintiff.  [*Id.* ¶ 119 (citing 49-5)].  Yet, despite this knowledge, Citi allowed the RBL account to remain open.  By the time Citi finally closed the account on June 27, 2022, the account balance was zero.  [*Id.* ¶ 121].  Bank account statements attached to the First Amended Class Action Complaint show that between March 8, 2022, and June 27, 2022, hundreds and hundreds of transactions totaling in the millions of dollars flowed through the RBL account.  [*See* ECF No. 49-4].  Accordingly, Plaintiff alleges in sufficient factual detail that Citi provided substantial assistance to RBL's fraud scheme to withstand dismissal. *See Gevaerts,* 56 F. Supp. 3d at 1343 (finding "substantial assistance" allegations sufficient to withstand dismissal).

In sum and substance, Plaintiff sufficiently pleads actual knowledge and substantial assistance to support its aiding and abetting claims such that Citi's Motion to Dismiss Counts II, IV, and VI of the First Amended Class Action Complaint is denied.  *See Gevaerts,* 56 F. Supp. 3d at 1343 (S.D. Fla. 2014) (denying motion to dismiss aiding and abetting claims); *Bansal v. TD Ameritrade, Inc.,* No. 23-81539-CIV, 2024 WL 3009423, at *4–8 (S.D. Fla. June 7, 2024) (same) (Matthewman, M.J.).[7]

### B.      Unjust Enrichment (Count VIII)

Citi maintains that Counts VII and VIII stem from identical allegations based on the same legal standard of unjust enrichment such that Count VIII must be dismissed as duplicative of Count VII.  [ECF No. 60 at 18–19].  In the First Amended Class Action Complaint, Count VII alleges Plaintiff conferred a direct benefit on Citi through "interest, fees, charges, rebates, and other benefits

---

[7]      The Court does not, and need not, specify the exact moment between March 8 and June 27, 2022, that the Plaintiff's allegations sufficiently establish actual knowledge and substantial assistance. Discovery will allow the parties to determine whether genuine issues of material fact exist on those elements, including when (if ever) such elements are established (or not established).  This Order only concludes that, under the law governing a motion to dismiss pursuant to Rule 12(b)(6), the Plaintiff has alleged sufficient facts, *in toto*, to survive dismissal of these claims.

associated with maintaining large deposit accounts." [FAC, ECF No. 49 ¶ 194]. Count VIII alleges a direct benefit in Citi's ability "to issue more loans or other money-making securities" that require certain bank reserves. [*Id.* ¶ 202]. Citi says Count VII's "ability to issue more loans or other money-making securities" falls within the catchall phrase "other benefits associated with maintaining large deposit accounts" of Count VII. [ECF No. 60 at 18–19]. Without citing any caselaw on why the unjust enrichment claim pleaded in Count VIII should be allowed, Plaintiff only briefly responds that "the First Amended Complaint alleges two approaches to benefits that were conferred on Citi by Plaintiff, thereby satisfying the first element of an unjust enrichment claim." [ECF No. 65 at 21].

"Duplicative claims are those that stem from identical allegations, that are decided under identical legal standards, and for which identical relief is available." *Nat'l Ins. Consulting Grp., LLC v. Kandel,* No. 1:19-CV-22373-KMM, 2020 WL 13389742, at *2 (S.D. Fla. Jan. 15, 2020) (quoting *Manning v. Carnival Corp.*, No. 12-22258-CIV, 2012 WL 3962997, at *2 (S.D. Fla. Sept. 11, 2012) (internal quotation marks omitted)). "To promote judicial economy, a court should dismiss claims that are duplicative of other claims." *Id.* (citations and internal quotation marks omitted). However, where two claims represent "two distinctive theories… pled in the alternative," dismissal is not appropriate. *See Resolution Tr. Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1532 (S.D. Fla. 1993) (citing Fed. R. Civ. P. 8(d)(2); *Brenner v. Miller*, No. 09-60235-CIV, 2009 WL 1393420, at *1 (S.D. Fla. May 18, 2009).

After due consideration, the Court agrees that the alleged benefit conferred in Count VIII is subsumed by the catchall "other benefits" phrase of Count VII. Thus, the two claims stem from identical allegations that are decided under identical legal standards for which identical relief is available. Accordingly, Count VIII is DISMISSED as duplicative.

## IV.   CONCLUSION

Based upon the foregoing, and upon due consideration, it is hereby **ORDERED AND ADJUDGED** that Citi's Motion to Dismiss [**ECF No. 60**] is **DENIED**. This case will proceed on

Counts II, IV, VI, and VII asserted against Citi in the First Amended Class Action Complaint [ECF No. 49]. Count VIII is DISMISSED as duplicative. Citi must answer the First Amended Class Action Complaint no later than 21 days from the date of this Order.

   **DONE AND ORDERED** in the Southern District of Florida this March 5, 2025.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record